WILLIAM R. THROPP, ELIZABETH JANE THROPP, ADAM EXTON, ELIZA EXTON and EMMA EXTON

*v.*

PUBLIC SERVICE ELECTRIC COMPANY, a corporation.

[Submitted May 1st, 1914. Decided July 7th, 1914.]

1. Township act March 24th, 1899 (*P. L. 1899 p. 399 § 67*), provides that a township committee may provide for lighting the streets and public places of the township, and may contract with any person or private corporation for a supply of light for public use in the township.—*Held,* that the power to light the streets includes the power to use the prevailing and approved methods of illuminating by electricity, which implies the right to employ the instruments required to effectuate the object, including the right to erect poles and wires in the streets for public lighting without the consent of abutting owners.

2. Where an electric company was under contract to light the streets of a township, it was authorized under its franchise to construct and maintain in the streets poles and wires of sufficient size to enable it to perform its contract, but it had no authority, as against abutting property owners, to install and maintain in the streets poles of much greater size than would be required to sustain its wires necessary for its public service contract, in order to maintain a high-tension transmission system for the sale of electricity for private use.

Mr. *Richard S. Wilson,* for the complainants.

Mr. *Frank Bergen,* for the defendant.

BACKES, V. C.

The defendant erected electric light poles on the highway in front of the complainants' land, located in Hamilton township, Mercer county, without their consent, which they seek to have removed. At the time the poles were put up, and wires were strung, the defendant was under contract with the municipality to furnish street electric lighting, and, with others, the highway in front of the complainants' property was designated by the authorities for that purpose.

In so far as the poles and wires may be considered as means for public lighting, authority for their construction is to be found in the Township act of 1899 (page 372), section 67 of which reads:

"The township committee shall have the power to provide for lighting the streets and public places of the township, and for that purpose may contract with any person or private corporation for a supply of light for public use in said township."

The power to light the streets includes the power to use the prevailing and approved methods of illuminating by electricity, and necessarily implies the right to employ the instruments required to effectuate the object of the grant; and when the privilege thus granted is exercised through the medium of another, as authorized, the right is automatically conferred on that other. *French* v. *Robb,* 67 *N. J. Law 260; Andreas* v. *Gas and Electric Co.,* 61 *N. J. Eq.* 69. That poles and wires may be placed in a highway by a municipality for its public lighting, without the consent of abutting owners, is settled by authority in this state. *Meyers* v. *Electric Company,* 63 *N. J. Law 573.*

"The use of a street of a city or other municipality for the purpose of placing lamp posts or of laying gas pipes and mains therein, or erecting electric poles and conductors, for purposes of public lighting, is one of the burdens upon the fee which must be borne as an incident to the public right of traveling over the way, and is one of the uses for which the land was taken or dedicated as a public highway." *Dill. Mun. Corp.* (*5th ed.*) § *1213.*

The complainants do not pretend that they have sustained any injury which is not common to all abutting landowners, nor do

they invoke any special equities in their favor; but, on the argument, rested their claim to relief in this respect, exclusively, upon the theory that the poles on their property, even for public lighting purposes, are an unlawful invasion of their property rights. Upon this aspect of the case they must fail.

There is, however, another element in the case which they have vigorously pressed. They insist that the poles are very much larger than is required for the lighting of the highways of the township, and that the defendant's design in erecting poles of such great sustaining capacity as these have, was to carry wires for private lighting, and wires of a high-tension transmission system, the standard voltage of which is thirteen thousand two hundred volts. As to this, the proof is abundant. The defendant has power plants at Trenton, Bordentown, Burlington and Camden, which have recently been connected by the high-tension transmission system, the wires of which extend from the Trenton station along highways to the northerly line of the complainants' property, and then by detour to a point below their southerly line, where they again strike the highway and thence on to Camden. The poles of the trunk line are of a uniform height of about fifty-three feet when in position and measure at the ground base approximately sixteen inches in diameter, with gains for three or four cross-arms near the top. The line was being built and ten poles had been set along the complainants' lands, when, because of their protest, the work at this point was stopped, and the detour made. The ten poles remained and more were added to complete the closure, upon which were strung a single line of two wires forty feet up the poles, to supply lamps, which hang seventeen feet from the ground.

Although the defendant's witnesses aver that the poles in front of the complainants' property were of standard size, and were set to enable the defendant to carry out its contract with the township, it is also made plain by them that they are an integral and indispensable part of the defendant's general plan of operation for the transmission of electrical energy for public and private consumption, to wherever the current can be profitably marketed; and, indeed, they state very candidly that but for the objection of the complainants, the detour, so far as the high-tension wires

are concerned, would not have been made, and that they would have been strung on the poles, the subject of this litigation.

In testifying to the effect that the building of the transmission line was not entertained by the defendant until nearly a year after these poles were set, the assistant engineer of the defendant is evidently mistaken, because a year has not as yet transpired. What he evidently meant was that it was nearly a year after the township began negotiating for this lighting, which was in 1912, that the trunk line was projected. This harmonizes with the rest of the facts, all of which clearly evince that this construction was chiefly to further the private enterprise of the defendant. The use made of the poles in furnishing public lighting to the township is merely incidental to the defendant's general scheme or project, and, as one of the defendant's witnesses testified, they were put up "for future purposes," obviously meaning for future distribution of electricity, elsewhere and to others than the township. It is perfectly patent that this line of two wires, all that is needed to light the township roads, does not require these massive poles to suspend it, and it is equally incredible that the poles were erected solely for that purpose. It is of no consequence that the poles on the complainants' property are of the standard approved in electrical engineering, and of a size uniform with those on the highway, on lands of adjoining owners, who perhaps consented to their erection. We are dealing strictly with the rights of the complainants and the extent to which the defendant may exercise its power under the statute, without invading those rights.

The power conferred by the statute on the defendant, in virtue of its agency of the township, is measured and fixed by the power granted to the principal. To the extent of erecting such poles and stringing such wires as may reasonably be required for the carrying out of its contract with the township, the defendant had authority to put them in the highway on the lands of the abutting owners, without their consent. Any erections in excess of these requirements, though they may serve in performing the contract, are, without such consent, unlawful. *P. L. 1896 p. 322; Andreas* v. *Gas and Electric Co., supra.*

An injunction will issue to remove the poles. Application may be made to have determined the size of poles to be substituted.